**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 08-cv-01242-LTB

EDWARD C. REN,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

      Plaintiff, Edward C. Ren, appeals the final decision of Michael J. Astrue, Commissioner of Social Security, denying his application for Social Security Disability benefits and Supplemental Security Income benefits. Following a May 9, 2007, hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on May 29, 2007. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus making it the Commissioner's final decision. Plaintiff has exhausted his administrative remedies and this case is ripe for judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist the determination of this appeal. After consideration of the parties' briefs and the administrative record, and for the reasons set forth below, I AFFIRM.

**I. BACKGROUND**

      Plaintiff was born on June 24, 1957, and was forty-nine years of age at the time of the hearing. [Administrative Record "AR" 60]. He has a GED education. [AR 107]. His past work history includes employment as a laborer, maintenance technician, fast food delivery person,

maintenance supervisor, painter, automobile mechanic, and satellite installer. [AR 69]. Plaintiff's alleged onset date is June 4, 2004. [AR 60].

### A.  Plaintiff's Medical History

Plaintiff injured his back in August 2001. [AR 139]. An x-ray showed degenerative disc disease at L5–S1. [AR 140]. An MRI showed a large disc herniation, left sided, at L4–5. [AR 140]. A CT scan also showed left sided disc herniation at L4–5 with significant stenosis. [AR 140]. Plaintiff was limited to carrying, pushing, or pulling a maximum of ten pounds; no overhead reaching; no bending, twisting, turning, kneeling, crawling, or squatting; and no climbing ladders or stairs. [AR 193]. In November 2002, Plaintiff was issued permanent restrictions of: no lifting to bench height over 55lbs. occasionally, 25 lbs. frequently, or 10 lbs. constantly; no lifting to shelf height over 45 lbs. occasionally, 20 lbs. frequently, or 9 lbs. constantly; no pushing or pulling over 45 lbs. occasionally, 20 lbs. frequently, or 9 lbs. constantly; and avoiding frequent, repetitive bending at the wait and concomitant lifting. [AR 148].

In July 2004, Plaintiff reported reinjuring his back while mowing the lawn in June 2004. [AR 166]. His treating physician noted limited lumbar range of motion, "marked paralumbar muscle spasm," and single leg raise positive on the left at 30 degrees. [AR 166].

In November 2004, Plaintiff was referred to Dr. Benson for a psychological evaluation. [AR 215–26]. Dr. Benson noted Plaintiff suffered from chronic pain. [AR 224]. Dr. Benson opined that Plaintiff would be able to work in semi-skilled to skilled jobs, but not in highly skilled jobs. [AR 222]. Dr. Benson opined that Plaintiff would have some difficulty finding employment in jobs that "require stronger social skills or good communication ability." [AR

-2-

224]. Plaintiff reported using marijuana to control his pain. [AR 217, 225]. Dr. Benson diagnosed Plaintiff with mood disorder, cannabis dependence, and disorder of written expression. [AR 223].

In December 2004, Plaintiff reported to a vocational physical therapist, Mr. Rennell, that his June 2004 reinjury was caused by getting out of bed. [AR 204]. The physical therapist recommended light work, and found Plaintiff was able to lift 26 pounds at waist level on an occasional basis. [AR 205]. The physical therapist recommended the primary worker position be alternated sitting with occasional squatting, crawling, climbing, balancing, standing, or walking. [AR 205–06]. The physical therapist further recommended Plaintiff be limited to five to six hours of sitting per day and 60 minutes at a time; standing one to two hours in a workday and fifteen minutes at a time; and walking five to six hours per day as often as frequently and over moderate distances. [AR 206]. In January 2005, a state agency physician limited Plaintiff to lifting twenty pounds occasionally and ten pounds frequently; standing and sitting a total of six hours each in an eight-hour workday; and only occasional kneeling and crouching. [AR 207–14].

Plaintiff underwent an additional psychiatric evaluation in May 2005 from Dr. Gamblin. [AR 235–36]. Plaintiff reported he had begun taking computer classes, and had quit smoking marijuana. [AR 235]. Plaintiff reported fishing and golfing, and that he had spent the day before the evaluation teaching his son how to golf. [AR 235]. Plaintiff reported having no back pain and no physical limitations beyond a fifteen pound lifting restriction. [AR 236]. Dr. Gamblin diagnosed Plaintiff with "no current psychiatric diagnosis, possible previous major depression resolved." [AR 236]. In November 2005, however, Plaintiff was diagnosed with mood disorder by a therapist at the Colorado Center for Psychology, who noted Plaintiff presented with

pressured speech and frazzled appearance. [AR 239–40].

In December 2005, Plaintiff again reported reinjuring his back, this time in a motor vehicle accident. [AR 246]. He was diagnosed with whiplash injury to the thoracic and cervical regions involving segmental dysfunction and myospasm. [AR 246]. On January 11, 2006, Plaintiff reported experiencing dizziness and headaches. [AR 248].

Plaintiff was seen by a consultative physician, Dr. Gibbons, on June 29, 2006. [AR 267]. Plaintiff reported to Dr. Gibbons that his lifestyle was primarily sedentary, but he was able to prepare all his meals, do household work, and occasionally go fishing. [AR 267–68]. Dr. Gibbons found no physical limitations. Dr Gibbons further noted Plaintiff, upon leaving the clinic, was observed entering his car without difficulty, reaching across the passenger side to unlock the door and unroll the window, and to stretch across the width of the vehicle—all actions that, to Dr. Gibbons, "appeared to be inconsistent with complaints of low back difficulties." [AR 268]. Dr. Gibbons stated: "I believe the client did not put effort into this exam and may have tried to exaggerate his symptoms." [AR 268].

Plaintiff underwent another psychological evaluation in July 2006 from Dr. Jones. [AR 275–78]. Plaintiff reported chronic pain, but was able to play pool with his friends weekly, occasionally go fishing, do all his necessary shopping, household chores, cooking, dressing, and bathing, and occasionally run errands. [AR 276]. Plaintiff reported smoking marijuana for his back pain and "because of financial reasons." [AR 276]. Dr. Jones diagnosed Plaintiff with chronic pain disorder and adjustment disorder, but no significant evidence of depression or anxiety. [AR 278].

Plaintiff underwent a mental residual functional capacity assessment and psychiatric

review in August 2006 from Dr. Kahler. [AR 288–305].  Dr. Kahler found Plaintiff was moderately limited in his ability to understand and remember detailed instructions, sustain an ordinary routine without special supervision, interact appropriately with the general public, accept instructions and respond appropriately to criticism, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but was otherwise appeared "to retain capacity for moderately complex work with few social demands" or "limited social interaction." [AR 288–90, 304].  Dr. Kahler further opined Plaintiff had a moderate degree of limitation in maintaining social functioning and maintaining concentration, persistence, or pace, and had mild restriction of activities of daily living. [AR 302].  A physical residual functional capacity assessment performed at the same time indicated Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, and could stand or sit for a total of six hours each in an eight-hour workday, but was otherwise unlimited. [AR 281].

In February and March 2007, Plaintiff was seen by Dr. Bahr at Peak Vista Community Health Centers. [AR 317–21].  Dr. Bahr noted Plaintiff's reported back pain and prescribed Tylenol, Ibuprofen, and Neurontin. [AR 319–21].

## B.  Disability Hearing

At Plaintiff's hearing on May 9, 2007, he appeared without counsel. [AR 324–26]. Plaintiff testified he got around by bus, and did not drive. [AR 330].  He testified he completed four computer courses, had a GED education, and could type 35 words per minute. [AR 330].

Plaintiff testified about his 2001 back injury. [AR 331].  Plaintiff testifies he was released to work in late 2001 with a 50 pound lifting restriction. [AR 331].  He worked as a maintenance person but was fired for taking a day off. [AR 331–32].  Prior to being fired, he was able to do

all the requirements of the maintenance job. [AR 332].

Plaintiff testified he reinjured his back in 2004. [AR 332–33]. He described symptoms including spasms and cramps on his left leg and foot, balance problems, and pain. [AR 333]. Plaintiff stated he did not currently take pain pills because he was leery of them, but he would take them if instructed to do so by a doctor. [AR 333–34]. He admitted to preferring marijuana over other pain medications because it is not man made or tested on animals, and because prescription pain medications "knocked me out silly." [AR 334, 337]. Plaintiff testified he was not dependent on marijuana and smoked it only twice per month. [AR 334].

Plaintiff testified he currently could lift a maximum of twenty pounds. [AR 335]. He could walk for three blocks, which would take him about thirty-five minutes. [AR 335]. Plaintiff testified that sitting for prolonged periods without stretching caused him pain, and that he lays down six or seven times per day for ten to fifteen minutes at a time to relieve his back pain and spasms. [AR 335–36].

Plaintiff testified he had experienced depression beginning with his 2001 back injury. [AR 336–37]. Plaintiff felt he had been treated unfairly by "the system" and his doctors. [AR 336–37]. Plaintiff testified he was being treated by George Kinzie for his mental health issues, but he had missed he previous two appointments because of his back pain. [AR 337]. Plaintiff testified he tends to displace times and dates. [AR 338].

The ALJ then questioned a vocational expert ("VE"). The ALJ asked whether a person of the same age, education, and work background as Plaintiff, and who was "limited to an exertional level and full range of light, with non-exertional limitations of only occasionally bending, squatting, kneeling or climbing, no dealing with the general public—I'm sorry, leave

that out—no complex tasks [with] an SVP of three or less, and GED's of . . . one, two, or three at each of the three levels" could perform any of Plaintiff's past work. [AR 341–42]. The VE replied that such a person could not perform Plaintiff's past work, but could perform the jobs of cafeteria attendant, garment hanger, or retail marker. [AR 342]. The VE testified that these jobs were performed in the Colorado region in a manner generally consistent with their description in the Dictionary of Occupational Titles ("DOT"). [AR 342].

The ALJ then asked the VE whether a person with the same profile as the person in the first hypothetical question—but with the additional limitations of "a sit/stand option, able to alternate at will, a need to lay down and be off task, 10 to 15 minutes on an unscheduled basis up to five or six times a day"—would be able to perform any of the available jobs. [AR 342–43]. The VE testified that such a person would not be able to perform any competitive employment. [AR 343].

### C.  ALJ Ruling

In his ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520. Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since his onset date of June 4, 2004. [AR 21]. Applying the second step, the ALJ determined Plaintiff had the severe impairments of lumbar spine problems and affective disorder. [AR 21]. Applying the third step, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [AR 21–22].

Applying the fourth step, the ALJ determined Plaintiff was unable to perform past relevant work. [AR 27]. In reaching his conclusion at step four, the ALJ determined Plaintiff

had the residual functional capacity to "perform light work that does not have complex tasks (SVP-3 or less) (GED 1, 2, 3) or require dealing with the general public." [AR 22].

In making this finding, the ALJ considered both the medical evidence and Plaintiff's testimony. [AR 23–27]. The ALJ noted the numerous inconsistencies among Plaintiff's statements to his treating and examining physicians, the inconsistencies noted by Plaintiff's physicians between his subjective complaints and objectively observed limitations and behaviors, and the inconsistencies between the limitations adduced by Plaintiff's treating and examining physicians and the limitations described by Plaintiff in his testimony at the hearing. [AR 23–26]. The ALJ concluded that, although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's complaints concerning the intensity, persistence, and limiting effect of his symptoms were not entirely credible. [AR 25].

Proceeding to step five, the ALJ determined Plaintiff could perform the jobs of cafeteria attendant, garment hanger, and retail marker. [AR 28]. As the ALJ found these jobs existed in significant number in the national economy, the ALJ determined Plaintiff had not been under a disability as defined in the Social Security Act from June 4, 2004, through the date of his decision on May 29, 2007. [AR 28].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the

ALJ's findings—in order to determine if the substantiality test has been met. *Id*. at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion. *See Grogan*, 399 F.3d at 1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I may reverse or remand. *See Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

### III.  ISSUES RAISED

Plaintiff raises three issues on appeal: (1) the ALJ failed to express all elements of his RFC finding on a function-by-function basis; (2) the ALJ failed to properly consider Plaintiff's subjective complaints; and (3) the ALJ erred in relying on the VE's testimony at step five because the ALJ did not ask the VE whether a person who could not deal with the general public could perform competitive work.

### IV.  THE ALJ FAILED TO EXPRESS ALL ELEMENTS OF HIS RFC FINDING ON A FUNCTION-BY-FUNCTION BASIS

The ALJ found Plaintiff had "the residual functional capacity to perform light work that does not have complex tasks (SVP-3 or less) (GED 1, 2, 3) or require dealing with the general public." [AR 22]. As a general rule, an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of

work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, 1996 WL 374184, at *1 (1996) ("SSR 96-8p"). The function-by-function assessment requires the ALJ to address "an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately . . . even if the final RFC assessment will combine activities. . . . It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work." SSR 96-8p, 1996 WL 374184, at * 5.

Plaintiff argues the RFC assessment was not based upon the correct legal standards because it failed to consider all of Plaintiff's limitations on a function-by-function basis. I disagree. SSR 96-8p specifically notes the function-by-function analysis is most relevant when an ALJ determines whether a claimant is able to perform past work at step four. *See* SSR 96-8p, 1996 WL 374184, at * 5. As the ALJ found Plaintiff was unable to do past relevant work, the function-by-function analysis less critical. *See* SSR 96-8p, 1996 WL 374184, at * 5. Moreover—although the final RFC determination only referred to "light work"—the ALJ's subsequent analysis discussed in detail the various medical reports relating to Plaintiff's ability to perform all seven strength demands. This is adequate to meet the requirements of SSR 96-8p. Even if the ALJ had failed to include a function-by-function analysis in his RFC analysis at step four, however, any attendant error would be harmless because substantial evidence supported the ALJ's finding at step five that claimant had no limitations that would prevent him from performing available jobs. See Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); Murrell v. Shalala, 43 F.3d 1388, 1389–90

(10th Cir. 1994).

A review of the record shows that none of Plaintiff's treating or examining physicians found any physical limitations that would prevent Plaintiff from performing light work. The only record that possibly supporting any such limitation is the report of Mr. Rennell—a physical therapist ("PT") who is not a medical source—that recommended Plaintiff "be alternated be[tween] sitting with occasional standing and walking" [AR 205]. See 20 C.F.R. § 404.1513(d); Social Security Ruling 06-03p, 2006 WL 2329939 (August 9, 2006) ("SSR 06-03p"). This record is insufficient to show the ALJ's finding were not supported by substantial evidence.

The opinion of a PT is considered an "other source" that "cannot establish the existence of a medically determinable impairment." SSR 06-03p. The opinion of a physical therapist may be accorded some weight, however, based upon how long the PT has known and how frequently the PT has examined the claimant, how consistent the PT's opinion is with other evidence, the degree to which the PT presents relevant evidence to support an opinion, how well the PT explains the opinion, whether the PT has a specialty or area of expertise related to the claimant's impairment, and any other factors that tend to support or refute the opinion. *See id*. The record does not indicate the PT had known, examined, or treated Plaintiff prior to the date of the physical assessment. The record likewise contains no reference to any tests or documents the PT relied upon in reaching his conclusions. Moreover, the PT recommended "that Mr. Ren work in the Light category of work according to the US Department of Labor Work Categories"—a conclusion that is ultimately reflected in the RFC as determined by the ALJ. To the extent there is any inconsistency between a limitation to "light work" and a recommendation of "alternated

be[tween] sitting with occasional standing and walking," therefore, it was not error for the ALJ to disregard the latter, particularly in light of the weight of the evidence from medical sources. See id.; see also Wall v. Astrue, 561 F.3d 1048, 1063 (10th Cir. 2009) (holding it is not error for an ALJ to discount evidence—including evidence from "other sources"—without comment when the evidence is not significantly probative); Clifton v. Chater, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (noting the ALJ has no duty to discuss evidence that is controverted and not significantly probative).

The ALJ weighed all the evidence—including the PT report—and concluded that no additional physical limitations were justified above those normally attendant a limitation to light work.  Accordingly—even if I ultimately would have weighed the evidence differently had this case been before me de novo—the ALJ's determination of Plaintiff's residual functional capacity must stand.  See Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

## V. THE ALJ IMPROPERLY EVALUATED PLAINTIFF'S SUBJECTIVE COMPLAINTS

When considering what weight is to be given to a claimant's subjective complaints, the ALJ must initially inquire whether the claimant has medically determinable impairments that could reasonably be expected to produce the alleged symptoms.  *See* 20 C.F.R. § 404.1529.  The ALJ found Plaintiff had such medically determinable impairments.  [AR 25].

Once such inquiry has been made, the ALJ must then evaluate the intensity and persistence of the symptoms in order to determine how the symptoms limit the capacity for work.  *See id.*  Such an inquiry "requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."  Social Security

Ruling 96-7p, 1996 WL 374186, at *1 ("SSR 96-7p").  The ALJ determined that Plaintiff's subjective complaints of pain were not entirely credible. [AR 25].

### A.  Factors the ALJ must consider when making a credibility determination

"In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  *Id*. at *4.

The ALJ must consider all of the available evidence, including the claimant's subjective complaints.  *See id.* at *2–3.  He should give "careful consideration" to the "location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medication; treatment, other than medication, for pain relief; and the claimant's daily activities."  *Hamby v. Astrue*, 260 F. App'x 108, 113 (10th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)) (internal formatting omitted).  The ALJ should consider the degree to which the claimant's statements are consistent with the medical signs, laboratory findings, and medical history, and the degree to which the claimant's statements made in connection with her disability claim are consistent with the statements made to medical providers.  *See* SSR 96-7p, 1996 WL 374186, at *5–6.

The ALJ should also take into consideration whether manifestations of the complained-of

-13-

symptoms have been observed by the claimant's physicians or others. *See id.* In so doing, the ALJ must consider the claimant's entire medical treatment history:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

*Id*. at *7. On the other hand:

> the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id*. The ALJ should consider whether the claimant was able to afford the recommended treatment, and whether the claimant had "been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual." *Id*. at *8.

### B. The ALJ based his credibility determination on substantial evidence

When considering Plaintiff's subjective complaints, the ALJ reviewed the medical record and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his pain were not credible. When the ALJ makes a credibility determination—as the ALJ did

-14-

here—such a determination will not be overturned on review so long as it is based on substantial evidence and correct legal standards. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

The ALJ considered Plaintiff's credibility as part of his residual functional capacity determination at step four. In finding Plaintiff's complaints of pain—and the concomitant requirement that Plaintiff lie down for six or seven times per day—not credible, the ALJ noted Plaintiff reported no pain to Dr. Gamblin in May 2005 [AR 236], exhibited behaviors inconsistent with complaints of back pain when examined by Dr. Gibbons in June 2006 [AR 267–68], was believed by Dr. Gibbons to be exaggerating his symptoms [AR 268], and reported being able to fish, play pool, do chores, shop, and cook in July 2006 [AR 275–78]. The ALJ also accurately noted that none of Plaintiff's treating or examining physicians found any limitations on Plaintiff's ability to work a full day without lying down. Indeed, the only evidence of Plaintiff's limitation in that regard was his testimony at the hearing. As this testimony was inconsistent with the medical record—and with Plaintiff's own statements to his treating and examining physicians—it was not error for the ALJ to find Plaintiff's statements not entirely credible. *See* Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); SSR 96-7p, 1996 WL 374186, at *5–8. My inquiry is limited to whether the ALJ's finding that Plaintiff's subjective complaints were not credible was based on substantial evidence and correct legal standards. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). I conclude it was.

## VI. THE ALJ ERRED AT STEP FIVE BY RELYING ON DEFICIENT VE TESTIMONY

At Plaintiff's hearing on May 9, 2007, the ALJ asked the VE whether a person of the

same age, education, and work background as Plaintiff, and who was "limited to an exertional level and full range of light, with non-exertional limitations of only occasionally bending, squatting, kneeling or climbing, no dealing with the general public—I'm sorry, leave that out—no complex tasks [with] an SVP of three or less, and GED's of . . . one, two, or three at each of the three levels" could perform any of Plaintiff's past work. [AR 341–42]. The VE replied that such a person could not perform Plaintiff's past work, but could perform the jobs of cafeteria attendant, garment hanger, or retail marker. [AR 342].

In making his RFC finding, however, the ALJ found Plaintiff would be unable to deal with the general public—a limitation explicitly excluded from the question asked of the VE. Plaintiff argues that—because the VE was never asked whether there were available jobs for a person with Plaintiff's physical limitations who was also unable to work with the general public—it was error for the ALJ to rely on the VE's testimony regarding available jobs. While I agree the ALJ committed error, such error was harmless in light of the other substantial evidence indicating such a person could perform jobs that existed in significant numbers in the Colorado economy. See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding it "may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exception circumstances, i.e., where, based upon material the ALJ did at least consider (just not properly), we could confidently say that no reasonable alternative administrative factfinder, following the correct analysis, could have resolved the factual manner in any other way").

The VE testified that the jobs of cafeteria attendant, garment hanger, and retail marker are performed in the Colorado region in a manner generally consistent with their description in the Dictionary of Occupational Titles ("DOT"). [AR 342]. The DOT describes the job of retail

marker at 209.587-034.  The Tenth Circuit recently noted that the retail marker job, as described in the DOT, "do[es] not require significant contact with people."  See Krueger v. Astrue, No. 08-5146, 2009 WL 2096303, at *3 (10th Cir. July 17, 2009).  Similarly, the DOT describes the job of retail marker as having the lowest level of interaction with other people, and requiring only "taking instructions—helping," which the DOT describes as: "Attending to the work assignment instructions or orders of supervisor.  No immediate response required unless clarification of instructions or orders is needed."  See DOT, Appendix B; DOT 209.587-034 Marker, 1991 WL 671802.  Jobs in this category do not require "attending to the needs or requests of people or animals or the expresses or implicit wishes of people," or "talking with and/or signaling people to convey or exchange information."  See DOT, Appendix B.  Under this definition—which the VE testified accurately described the job as actually performed in Colorado—even a person who was limited to no dealing with the general public would still be able to perform the job of retail marker.

The VE testified that there were 2,080 retail marker jobs in the Colorado economy and 107,000 retail marker jobs in the U.S. economy.  While the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number,'" I can find no case in this circuit indicating a job that is available in such quantities would exist in anything but a significant number.  *See Chavez v. Barnhart*, 126 F. App'x 434, 436 (10th Cir. 1005); *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992); *Jimenez v. Shalala*, 879 F. Supp. 1069, 1076 (D. Colo. 1995); *see also Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("it appears to be well-established that 1,000 jobs is a significant number") (citing cases).

## VII.  CONCLUSION

Accordingly, it is ORDERED that the May 29, 2007, administrative decision in this matter is AFFIRMED.

Dated: October   29  , 2009.

BY THE COURT:


   s/Lewis T. Babcock
Lewis T. Babcock, Judge